## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

**ROGER RAMSAROOP,**

> **Plaintiff,**

> **v.**

**UNITED AIRLINES, INC.,**

> **Defendant.**

Civ. No. 21-00738 (KM) (JBC)

**OPINION**

KEVIN MCNULTY, U.S.D.J.:

The plaintiff, Mr. Ramsaroop, filed a negligence suit against Defendant United Airlines in New York state court in August 2020. The complaint alleges that, over two years previously, he had been injured by an automatic door while walking in the lobby of Defendant's cargo terminal at Newark Liberty International Airport. Defendant removed the case to federal court in the Eastern District of New York and moved to dismiss, arguing that the Eastern District lacked personal jurisdiction and that New Jersey's two-year statute of limitations barred the suit. *See* N.J. Stat. Ann. § 2A:14-2(a). Plaintiff disputed both issues, arguing that personal jurisdiction was proper and that New York's three-year statute of limitations governed the action. The parties agreed, however, that personal jurisdiction existed in the District of New Jersey and the Eastern District judge transferred the case sua sponte to this District pursuant to 28 U.S.C. § 1404(a).

Now before the Court is Defendant's motion to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6). (DE 17).[1] For the following reasons, the motion is **GRANTED**.

---

[1] Certain citations to the record are abbreviated as follows:

"DE" refers to the docket entry numbers in this case.

"Compl." refers to Plaintiff's verified complaint, originally filed in New York Supreme Court, Queens County. (DE 1-2.)

## I.   BACKGROUND

Plaintiff alleges that on June 19, 2018, he was walking in the front lobby of a United Airlines cargo terminal at Newark Liberty International Airport when the automatic doors at the lobby's entrance closed on him, "violently propell[ing] him to the ground." (Compl. ¶¶ 3-9.) He filed a complaint against Defendant United Airlines on August 13, 2020, in New York Supreme Court, Queens County, alleging negligence. (*Id.* at 1, 4.) Specifically, he claims that Defendant had a duty to safely operate and maintain its public premises and that as a result of the terminal lobby's door closing on him, he has been forced to pay ongoing medical expenses and has suffered "pain, shock[,] mental anguish," and permanent injury. (*Id.* ¶¶ 6-7, 11-12.)

On November 25, 2020, Defendant removed this action from New York state court to the U.S. District Court for the Eastern District of New York, pursuant to 28 U.S.C. § 1441(a), citing diversity of citizenship and an amount in controversy exceeding $75,000. *See* 28 U.S.C. § 1332(a).[2] (Rem. Not. at 4-8.) In connection with a pre-motion conference, Defendant informed District Judge Carol Bagley Amon that it intended to move for dismissal pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(6) because personal jurisdiction over Defendant was lacking and because New Jersey's two-year statute of limitations barred

---

"MTD" refers to Defendants' Brief in Support of its Motion to Dismiss. (DE 17-3.)

"Opp. to MTD" refers to Plaintiff's Memorandum in Opposition to Defendant's motion to dismiss. (DE 20.)

"EDNY Op." refers to Judge Amon's Memorandum & Order transferring the case to this Court. (DE 7.)

"Rem. Not." refers to the Notice of Removal filed by Defendant in the Eastern District of New York. (DE 1.)

[2]   Defendant notes that while Plaintiff's complaint does not clearly state an amount sought in damages, subsequent state court filings indicate that he seeks $950,000. (Rem. Not. ¶ 8.) The allegation of diverse citizenship is plausible, in that Plaintiff is a resident of Queens, New York, while Defendant was incorporated in Delaware and has its principal place of business in Chicago, Illinois. (Rem. Not. ¶ 5.)

Plaintiff's suit. (DE 4). Plaintiff responded that (1) personal jurisdiction over Defendant existed because Defendant conducted business in New York; and (2) New York's statute of limitations applied and did not bar his suit. (DE 6.)

On January 6, 2021, Judge Amon *sua sponte,* and with the consent of the parties, ordered the case's transfer to this District pursuant to 28 U.S.C. § 1404(a). Her brief opinion noted that Plaintiff did not dispute that Defendant is neither incorporated nor headquartered in New York and that the injuries at issue occurred in New Jersey. (EDNY Op. at 1-2.) Judge Amon wrote that the parties had agreed in a pre-motion conference that "personal jurisdiction over Defendant would lie in New Jersey courts" and that they had consented to a transfer. (*Id.*) Given that the parties did not object to a transfer, Judge Amon found that New Jersey would be an appropriate transferee "district [] to which all parties have consented," and that a transfer would also serve the "convenience of parties and witnesses." (*Id.* at 2-3 (quoting 28 U.S.C. § 1404(a)).) Finally, and most relevant to this Opinion, Judge Amon stated in a footnote to her opinion that, in consenting to the transfer, "Defendant expressly reserved any legal defenses other than personal jurisdiction . . . , including the time-bar defense raised in Defendant's pre-motion conference request." (*Id.* at 2, n.1.)

Now before this Court, Defendant moves to dismiss Plaintiff's complaint pursuant to Fed. R. Civ. Pro. 12(b)(6), again arguing that Plaintiff's claim is barred by New Jersey's two-year statute of limitations for personal injury claims. (MTD at 1-2, 19-22.) Defendant urges that Judge Amon's transfer order pursuant to 28 U.S.C. § 1404(a) thus did not constitute a determination that personal jurisdiction over Defendant existed in New York, and that since personal jurisdiction in New York was lacking, New Jersey's choice-of-law rules and statute of limitations apply. (*Id.* at 2, 5-7, 13-19). Plaintiff responds that a transfer under § 1404(a), on the contrary, requires the application of the choice-of-law rules and three-year statute of limitations of the transferor state, New York. (Op. at 1-2, 5, 12-13.) Moreover, it contends that Defendant waived

3

any objection to personal jurisdiction in New York in the course of consenting to the transfer of this case. (*Id.* at 2, 10-12.)

## II.   DISCUSSION AND ANALYSIS

### A. Standard of Review

Under Fed. R. Civ. P. 12(b)(6), the Court may dismiss a complaint, in whole or in part, if the plaintiff fails to state a claim upon which relief may be granted. The moving party bears the burden of showing that no claim has been stated. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). On such a motion, the well-pleaded factual allegations of the complaint must be taken as true, with all reasonable inferences drawn in plaintiff's favor. *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008).

Although a complaint need not contain detailed factual allegations, "a plaintiff's obligation to provide the 'grounds' of [his] 'entitlement to relief requires more than labels and conclusions." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also* Fed. R. Civ. P. 8(a)(2) (requiring a complaint to plead "a short and plain statement of the claim showing that the pleader is entitled to relief"). Thus, the factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, demonstrating that it is "plausible on its face." *See Twombly*, 550 U.S. at 570; *see also Umland v. PLANCO Fin. Servs.*, Inc., 542 F.3d 59, 64 (3d Cir.2008). This entails "plead[ing] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). While "[t]he plausibility standard is not akin to a 'probability requirement' . . . it asks for more than a sheer possibility." *Id.* at 678. Stated differently, in reviewing the well-pleaded factual allegations and assuming their veracity, this Court must "determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679.

### B. Transfers Under 28 U.S.C. § 1404 and 28 U.S.C. § 1406

First, to identify the applicable choice of law rule, I must decide whether personal jurisdiction over Defendant and venue over the case existed in New

York. Second, I must apply the appropriate choice-of-law rule to choose the statute of limitations of New York or New Jersey. Third, I must apply the appropriate state's statute of limitations to determine whether Plaintiff's complaint is time-barred.

### 1. Did the Eastern District of New York lack venue or personal jurisdiction?

To determine whether New York or New Jersey substantive law applies, I must first determine which state's choice of law rules apply. That determination depends in turn on whether there was venue or personal jurisdiction in the Eastern District of New York.

The general rule in non-transferred cases is well-established: "In an action based on diversity of citizenship, a federal court generally applies the choice-of-law rules of the jurisdiction in which it sits." *Amica Mut. Ins. Co. v. Fogel*, 656 F.3d 167, 170 (3d Cir.2011) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)). Transfer of a case to another district complicates the picture, however.

Certain principles are clear. Under both Third and Second Circuit law, a key issue is whether the case was properly brought in the original district. If it was, but the court nevertheless transferred it to another district for reasons of convenience, nothing changes but the location of the courtroom. The case continues to be governed by the law, including conflict-of-laws principles, of the original, transferor district. Where the case was not properly brought in the original district, however, the rule is the opposite. Thus, if statutory venue is improper, and the case is transferred to a proper venue, the law of the original, improper forum does not apply. *A fortiori,* if the case is transferred because the transferor district could not constitutionally exercise personal jurisdiction over the defendant, due process bars application of the law of the original forum.

One vehicle for transfer of a case is § 1404(a), which affords district courts discretion to transfer an action to another district "for the convenience of parties and witnesses" and "in the interest of justice." 28 U.S.C § 1404(a). A discretionary § 1404(a) transfer from one permissible venue to another effects a

change of courtrooms, not a change of applicable law. Thus, when a case is transferred on purely discretionary § 1404(a) grounds, "the transferee forum must apply the law of the initial forum." *Amica*, 656 F.3d at 171 (citing *Van Dusen v. Barrack*, 376 U.S. 612, 639 (1964) and *Ferens v. John Deere Co.*, 494 U.S. 516 (1990)).

Another vehicle for transfer of a case is 28 U.S.C § 1406(a), which empowers a district court to dismiss or transfer a case when the plaintiff has filed suit in an improper forum. *See Lafferty v. St. Riel*, 495 F.3d 72, 77 (3d Cir. 2007). "When cases have been transferred for improper venue, transferee courts generally apply the substantive law they would have applied had the action been brought there initially." *Id.* at 77, 81. The underlying principle is that the case should never have been filed in the transferor district in the first place, so the *Klaxon* law-of-the-forum principle has no force. *See Gerena v. Korb*, 617 F.3d 197, 204 (2d Cir. 2010) ("If a district court receives a case pursuant to a transfer under 28 U.S.C. § 1406(a), for improper venue, . . . it logically applies the law of the state in which it sits, since the original venue, with its governing laws, was never a proper option."). Improper venue and lack of personal jurisdiction are not the same thing, of course, although the relevant factors may overlap. But lack of personal jurisdiction gives the choice of law issue a due process dimension, because where the transferor court lacked jurisdiction, the transferee court *cannot,* consistent with due process, apply the transferor forum's choice-of-law principles. *See Reyno v. Piper Aircraft Co.*, 630 F.2d 149, 164-65 (3d Cir.1980) (explaining that where a state's "exercise of jurisdiction over [a defendant] would violate due process, so would application of that state's choice of law rules"), *rev'd on other grounds*, 454 U.S. 235 (1981)).

But consider a middle case. Suppose a district court invokes § 1404(a) to transfer a case in which it lacked personal jurisdiction or proper venue? Defendant says that is what occurred here.

The U.S. Court of Appeals for the Third Circuit has drawn a sharp distinction between discretionary § 1404 transfers and § 1406 transfers based on improper venue. In *Lafferty*, the Third Circuit observed that the two kinds of transfers are fundamentally different: "Distinctions between §§ 1404(a) and 1406(a) have to do with discretion, jurisdiction, and choice of law. Section 1404(a) transfers are discretionary determinations made for the convenience of the parties and presuppose that the court has jurisdiction and that the case has been brought in the correct forum." *Id.* at 76. Indeed, "many courts have noted that the only relevant distinction" between § 1404(a) and § 1406(a) transfers is that "the former is appropriate when venue is proper and [the latter] should be used when venue is improper." *Id.* at 78 (internal quotation marks and citation omitted) (alteration in original). Admonishing courts that "have blurred this distinction," the *Lafferty* court noted that "[f]aced with a choice-of-law question, federal courts in the district to which the case has been transferred under § 1404(a) *must* apply the law of the transferor state." *Id.* at 76, 78 (emphasis added); *see also Amica*, 656 F.3d at 171 (applying New Jersey choice of law rules to a case transferred sua sponte from New Jersey to Pennsylvania federal court pursuant to § 1404(a)).

It would be tempting, then, to extend this rationale and conclude that a transfer under § 1404 implies that both personal jurisdiction and venue must have been proper; otherwise, the transfer would have been done under § 1406. Experience has undercut any such assumption. Even in the Circuit which decided *Lafferty,* some notion of a § 1404 transfer "in the interest of justice," based on lack of personal jurisdiction, survives. *Lafferty* itself acknowledged case law holding that, where personal jurisdiction is lacking, "the interests of justice" may be better served by a transfer under § 1404(a) than by a dismissal followed by refiling in the proper venue. *See Lafferty*, 495 F.3d at 79-80 (citing *United States v. Berkowitz*, 328 F.2d 358 (3d Cir.1964) (interpreting § 1404(a) to allow the transfer of a suit to recover unpaid federal taxes, although the transferor court lacked personal jurisdiction, given the statute's goal of

"removing whatever obstacles may impede an expeditious and orderly adjudication of cases and controversies on their merits" (quoting *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 466-67 (1962)))).

Second Circuit law is not identical, but is not dissimilar. There, "whether or not venue [is] proper," a district court may cure lack of personal jurisdiction "by transfer to a district in which personal jurisdiction c[an] be exercised, with the transfer authority derived from *either* section 1406(a) or section 1404(a)." *SongByrd, Inc. v. Est. of Grossman*, 206 F.3d 172, 179 n.9 (2d Cir. 2000) (emphasis added). But whichever statute is chosen, the law of transferor state will continue to govern the case only "so long as the transferor state could properly have exercised jurisdiction" in the first place. *Gerena*, 617 F.3d at 204; *see also SongByrd*, 206 F.3d at 180 ("[I]n a transferred action the law of the transferor jurisdiction applies only if the transferor court has personal jurisdiction." (internal citation omitted)).

In *Gerena*, for example, the district court's transfer of a case under § 1404(a) left the Court of Appeals uncertain as to whether the transferor district in New York had possessed personal jurisdiction. As a result, it was unclear whether the transferee district court in Connecticut should have applied its own choice-of-law rules or those of New York. 617 F.3d at 204-05. The Second Circuit remanded the case for specific findings as to whether personal jurisdiction had existed in New York. *Id.* at 205-07.[3]

The issue of an inter-circuit transfer between districts, implicating both Second and Third Circuit transfer standards, faced the District Court in *TekDoc Servs., LLC v. 3i-Infotech Inc.*, No. CIV.A. 09-6573 MLC, 2013 WL 2182565, at *9 (D.N.J. May 20, 2013). There, a Connecticut district court had

---

[3]     Both New York and Connecticut, of course, are in the Second Circuit, so the matter could be resolved conveniently via an appeal. Where the transferor and transferee courts are in different Circuits, as in this case, an appellate resolution is more problematic. The U.S. Court of Appeals for the Third Circuit cannot, for example, "remand" a case to a New York district court. As in *Tek Doc, see infra*, the transferee district court may be required to perform the necessary analysis, subject to correction by the Third Circuit.

found that personal jurisdiction in Connecticut was lacking, and so transferred the case to New Jersey under § 1404(a). *Id.* at *7, *9. Judge Mary L. Cooper in the District of New Jersey observed that the Connecticut District Court "did not consider the factors normally implicated by such a [§ 1404(a)] transfer"; rather, it "spent considerable time justifying its conclusion that it was an improper forum for the action." *Id.* (citing *N.Y. Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*, 599 F.3d 102, 112 (2d Cir. 2010)).[4] While conceding that such a transfer might more appropriately have been accomplished under § 1406, Judge Cooper concluded that it would "improperly emphasize[] form over substance" to treat the Connecticut court's election to invoke § 1404(a) as an implied finding that Connecticut had possessed personal jurisdiction. *Id.* As noted above, a district court may opt for § 1404 as a vehicle to transfer a case where personal jurisdiction is lacking. Therefore, the transferee court was required to look beyond the statutory label and determine the actual "rationale underlying the Connecticut District Court's transfer." *Id.* at 10. Recognizing that the transferor court had lacked jurisdiction, and mindful of the due process implications of holding otherwise, Judge Cooper held that New Jersey choice-of-law rules applied to the case. *Id.* (citing *Reyno*, 630 F.2d at 164-65 (explaining that where a state's "exercise of jurisdiction over [a defendant] would violate due process, so would application of that state's choice of law rules")).

This survey of the case law provides a template for this Court's analysis of Judge Amon's transfer of the case from the Eastern District of New York to the District of New Jersey. For the reasons stated above, it is not dispositive that Judge Amon opted to invoke § 1404(a); under both Second Circuit and

---

[4]         Factors normally implicating a § 1404(a) transfer under Second Circuit precedent include "(1) the plaintiff's choice of forum, (2) the convenience of witnesses, (3) the location of relevant documents and relative ease of access to sources of proof, (4) the convenience of parties, (5) the locus of operative facts, (6) the availability of process to compel the attendance of unwilling witnesses, and (7) the relative means of the parties." *N.Y. Marine*, 599 F.3d 102, 112 (2d Cir. 2010).

Third Circuit standards, a transfer under § 1404(a) might nevertheless occur in the absence of personal jurisdiction.[5]

I, therefore, like Judge Cooper, look behind the statutory label and examine the basis of the transfer and the existence, or not, of personal jurisdiction and/or venue in New York. Because the parties consented to the transfer, there was no need for Judge Amon to write a lengthy opinion, but the basis of it is clear enough.

To begin with, this matter does not appear to present the clear scenario of a merely discretionary change of venue, which would require application of the law of the transferor forum. Personal jurisdiction had been placed in issue, and Judge Amon's reasoning suggests that she and the parties had it in mind when transferring the case. The question, then, is whether the Eastern District of New York was merely an inconvenient forum, or an ineligible one: *i.e.,* whether personal jurisdiction or venue was lacking.

Judge Amon's opinion suggests, and well-established principles establish, that New York lacked both venue and personal jurisdiction, and that the application of New Jersey's choice-of-law rules is appropriate in this case.

(b) **Venue in General**.—A civil action may be brought in—

(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;

(2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or

(3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

---

[5]     I am of course a judge of coordinate jurisdiction in relation to Judge Amon. To be clear, I do not presume to suggest, nor do I believe, that there was any error in her order under Second Circuit law.

28 U.S.C. § 1391(b). Judge Amon, while not citing § 1391 in her brief opinion, tracked the requirements of that statute. Her opinion notes that Plaintiff "did not dispute that Defendant is neither incorporated nor headquartered in New York and also did not dispute that the injuries at issue occurred in New Jersey." (EDNY Op. at 1-2.) More broadly, her opinion observed that "this lawsuit arises entirely from events which took place in New Jersey." (*Id.* at 2-3.) The third possibility—that there is no district in which venue would lie—does not apply. The clear implication is that venue was not proper in the Eastern District of New York.

Personal jurisdiction follows suit. Plaintiff has failed to suggest any legitimate basis for the exercise of personal jurisdiction over Defendant by a federal court sitting in New York. Looking first at specific jurisdiction, all of the facts underlying the claim occurred in New Jersey, not New York. Plaintiff's tort claims do not arise from any New York activity or occurrence. *See Bristol-Myers Squibb Co. v. Superior Ct. of California, San Francisco Cnty.*, 137 S. Ct. 1773, 1781 (2017) ("In order for a court to exercise specific jurisdiction over a claim, there must be an 'affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State.'" (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). As for general jurisdiction, United Airlines is incorporated and has its principal place of business elsewhere. While it is plausible that it does business in New York, it is not "at home" there. *See Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) (noting that general jurisdiction over corporations may be exercised in a place "in which the corporation is fairly regarded as at home," paradigmatically its "place of incorporation and principal place of business").[6] This suit's only apparent connection to the Eastern District of New York or the State of New York State is that *Plaintiff* resides there. Many a plaintiff would

---

[6]  Plaintiff claims that New York has general jurisdiction over Defendant and that this case is distinguishable from *Daimler*, but offers neither relevant precedent nor factual support in support of those contentions. (Opp. to MTD at 13-15, 18-20.)

prefer to sue at home, but due process demands more. *See Reyno*, 630 F.2d at 165, 165 n. 56 (noting that a "forum must have reasonable due process basis for applying [its] own law, which does not exist if party opposing application of forum's law has no minimum contacts with forum, the transaction giving rise to the claim is not connected with the forum, or application of the forum's law would otherwise be manifestly unfair." (citation omitted)).

Plaintiff argues, however, that Judge Amon's opinion reflects that Defendant waived personal jurisdiction in connection with consenting to the transfer. That argument arises from the following passage:

> At the premotion conference, counsel for Plaintiff and Defendant agreed that personal jurisdiction over Defendant would lie in New Jersey courts. Counsel further stated that they would not object to this Court transferring the case to a federal court in New Jersey.[1]

> [fn. 1] Counsel for Defendant expressly reserved any legal defenses other than personal jurisdiction should the case be transferred, including the time-bar defense raised in Defendant's pre-motion conference request.

(EDNY Op. at 2 & n.1)

The footnoted reference must be understood in relation to the passage to which it is linked. I understand Judge Amon to mean that the Defendant, in connection with consenting to transfer, is abandoning its motion to dismiss for lack of personal jurisdiction, because the District of New Jersey clearly possesses personal jurisdiction. It would have made no sense to transfer the case to New Jersey if this district, too, lacked personal jurisdiction over Defendant. And if the case was being transferred, it made little sense—at least from a litigant's point of view—to continue to litigate the issue of personal jurisdiction in New York. I do not read this concession as foreclosing indirect consideration of the issue of whether New York had personal jurisdiction or, *a fortiori,* venue, insofar as it related to the issue of whether New York's or New Jersey's choice-of-law rules apply to the statute of limitations issue.

This case never belonged in the Eastern District of New York in the first place. There is no toehold for the application of that transferor district's choice

of law rules, and a plaintiff can obtain no advantage from filing a case in the wrong district.

Accordingly, I find that, for *Klaxon* purposes, New Jersey is deemed to be the forum, and New Jersey's choice-of-law rules apply to this action.

### 2. Choice of New Jersey Statute of Limitations

I next apply New Jersey's choice-of-law rules to determine which state's statute of limitations applies to this tort. I conclude that New Jersey's choice-of-law standards apply, and that they require the application of New Jersey's statute of limitations.[7]

In tort cases, New Jersey has adopted "the most-significant-relationship" test as described in in the Restatement (Second) of Conflict of Laws. *Maniscalco v. Brother Int'l (USA) Corp.*, 709 F.3d 202, 206 (3d Cir. 2013) (citing *P.V. v. Camp Jaycee*, 197 N.J. 132, 142-43, 962 A.2d 453, 459-60 (2008)). That test consists of two prongs: (1) "to determine whether or not an actual conflict exists between the laws of the potential forums"; and (2) to "determine which jurisdiction has the 'most significant relationship' to the claim." *Id.* at 206-07 (citing *Camp Jaycee*, 962 A.2d at 460-61).

The first prong here is unquestionably met. the parties agree that New York's and New Jersey's statutes of limitations differ, and that the difference matters. New Jersey's two-year statute would potentially bar the action; New York's three-year statute would not.

Turning to the second prong, in assessing which state has the most significant relationship to the claim, a court "is required to consider all of the contacts that each jurisdiction has with the issue." *Camp Jaycee*, 962 A.2d at 459. The Restatement (Second) articulates four contacts of significance: "(a) the

---

[7]     Were New York's choice-of-law rules to apply, they might well dictate application of New York's statute of limitations. *See* N.Y.C.P.L.R. § 202 ("borrowing statute" applying New York statute of limitations to cases involving a New York plaintiff); *Baker v. Stryker Corp.*, 770 F. App'x 12, 14 (2d Cir. 2019) (quoting *Braniff Airways, Inc. v. Curtiss-Wright Corp.*, 424 F.2d 427, 428 (2d Cir. 1970)); *Oltarsh v. Aetna Ins. Co.*, 15 N.Y.2d 111, 115, 204 N.E.2d 622, 624 (1965).

place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered." *In re Accutane Litig.*, 235 N.J. 229, 260, 194 A.3d 503, 521 (2018) (quoting Restatement (Second) of Conflict of Laws § 145 (1971)); *see also Camp Jaycee*, 962 A.2d at 461-63 (assessing these four contacts to conclude that a suit concerning parties from New Jersey and a personal injury in Pennsylvania and should be governed by Pennsylvania law). Where New Jersey is the forum of litigation and has a substantial interest in the litigation, it presumptively applies its own statute of limitations, "provided there are no 'exceptional circumstances' making that 'result unreasonable.'" *McCarrell v. Hoffmann-La Roche, Inc.*, 227 N.J. 569, 597, 153 A.3d 207, 224 (2017) (quoting Restatement (Second) of Conflict of Laws § 142)).

Here, all signs point to New Jersey as the state with the more significant relationship to the current action. New Jersey was both the location of Plaintiff's injuries and where the alleged conduct causing the injury occurred— Judge Amon's opinion noted that Plaintiff has already conceded as much. (EDNY Op. at 1-2, 2-3.); *see also Accutane*, 194 A.3d at 521 ("When both conduct and injury occur in a single jurisdiction, with only rare exceptions, the local law of the state where conduct and injury occurred will be applied to determine an actor's liability." (internal quotation marks and citation omitted)). Moreover, to the extent that Plaintiff and Defendant have any relationship, it is one that was formed in New Jersey when Plaintiff entered Defendant's public premises at Newark Airport. The third contact, the parties' citizenship, is at best equivocal, because both parties hail from out of state: Plaintiff is a New York resident while Defendant is a Delaware corporation with its principal place of business in Illinois. (Rem. Not. ¶ 5.) Such varied citizenship only confirms that no other state can claim an interest superior to that of New Jersey in regulating the conduct of people within its borders or the safe maintenance of a New Jersey airport. *See Accutane*, 194 A.3d at 521 ("[A] state

has an obvious interest in regulating the conduct of persons within its territory and in providing redress for injuries that occurred there" (internal quotation marks and citation omitted)). Accordingly, I find that New Jersey's interest in this claim is paramount, that no exceptional circumstances are present, and thus, New Jersey's statute of limitations applies.

### 3. Application of New Jersey Statute of Limitations

This action is barred by the New Jersey statute of limitations. New Jersey requires personal injury actions to be filed within two years of their accrual. N.J. Stat. Ann. § 2A:14-2(A).[8] Here, Plaintiff was allegedly injured by Defendants' automatic doors in June 2018. He filed this action in New York state court 26 months later, in August 2020. I therefore agree with Defendant that Plaintiff's claim was filed two months too late and is accordingly time-barred.

### CONCLUSION

For the reasons set forth above, Plaintiff's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) is **GRANTED**.

A separate order will issue.

Dated: February 15, 2022

/s/ Kevin McNulty

_____

**Hon. Kevin McNulty**
**United States District Judge**

---

[8]     Under New Jersey law, a personal injury cause of action ordinarily accrues "when the plaintiff knows of his or her injuries and of facts sufficient to attribute those injuries to the fault of another." *Viviano v. CBS, Inc.*, 101 N.J. 538, 546, 503 A.2d 296, 300 (1986); *see also Campbell v. Cnty. of Morris,* 852 F. App'x 73, 75 (3d Cir. 2021) ("The clock begins when a claim accrues—that is when the plaintiff knew or should have known of the injury upon which its action is based." (internal quotation marks and citation omitted)). There is no indication that Plaintiff's discovery of his injuries and understanding of the surrounding circumstances were so delayed as to require a tolling of the statute of limitations. Indeed, the nature of the tort is that he certainly was aware of his injury, and the source of his injury, immediately.